**BANK OF LINCOLNWOOD, an Illinois banking corporation, Plaintiff-Appellee,**

v.

**FEDERAL LEASING, INC., a Maryland Corporation, Defendant-Appellant.**

No. 79–2186.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 29, 1980.

Decided May 22, 1980.

John Doar, New York City, for defendant-appellant.

Nathan H. Dardick, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The major issue in this appeal concerns the finality of the district court's judgment. No issue is raised about the correctness of the trial judge's determination of the rights and liabilities of the parties. Indeed, the defendant admitted in its answer its liability on the plaintiff's claim to collect on a promissory note. Instead, the defendant here urges that the trial court abused its discretion in making its determination final by certifying it pursuant to Fed.R.Civ.P. 54(b).[1] A corollary of the appellant's posi-

---

1. Rule 54(b) of the Federal Rules of Civil Procedure provides:

　(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

As discussed *infra*, the rule requires both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." The fulfillment of these two requirements is frequently referred to as a "Rule 54(b) certification." This "certification"

tion, were we to accept it, would seem to be that this court lacks jurisdiction to review the judgment and thus must dismiss the appeal for want of a final decision. *See* 28 U.S.C. § 1291. We need not decide this issue, however, because we hold that the entry of judgment pursuant to Rule 54(b) was within the trial court's discretion. Because no issue is raised as to the merits, we affirm the district court's judgment.

The several parties to this action were participants in a computer financing transaction which is apparently typical of most in the industry. The defendant-appellant, Federal Leasing, Inc., is in the business of leasing computer equipment to commercial and governmental users. To purchase equipment for subsequent lease, Federal obtained financing from banks such as the plaintiff-appellee, Bank of Lincolnwood. Federal executed a promissory note providing for payment in installments to the bank and containing an acceleration clause in the event of default. The note was secured by a related security agreement. Federal then leased the equipment to a user, in this case Dial Financial Corporation. The lease provided for rental payments equal to Federal's installment obligations on the note, which the user paid directly to the bank.

Among the lease agreement's provisions was one which precipitated the controversy here. The lease provided that the user could terminate the lease at its convenience without penalty. This obviously left Federal with a substantial contingent liability which Federal sought to insure against by obtaining a policy with Lloyd's Underwriters and British Companies. The policies issued by Lloyd's provided that it would indemnify Federal for losses arising out of early lease termination. Apparently rapid technological advances in the computer industry have prompted a substantial number of computer users to take advantage of the early termination clauses in Federal's leases. Lloyd's, however, has refused to indemnify Federal for its losses from the cancella-

tions because of Federal's alleged failure to adhere to provisions in its policy of insurance.

The computer financing arrangement thus involves five participants: (1) The lessor purchases equipment from (2) the seller with financing from (3) the bank. The lessor then leases the equipment to (4) the lessee, with the possibility of losses insured by (5) the underwriter. This action has as parties four of the five participants—all except the computer seller—and arises out of financing arranged in 1976. In early 1979, Dial, the lessee, notified Federal of its intent to cancel its lease. Federal notified Lloyd's which refused to pay, and Federal, therefore, was unable to meet its obligations on the promissory note held by Lincolnwood. Lincolnwood, in turn, exercised its option to accelerate the note and commenced this suit on June 8, 1979.

Lincolnwood's complaint comprises three counts. Count I is solely against Federal and seeks to collect on the promissory note. Count II seeks to enforce Lincolnwood's security interest in the computer equipment and names as defendants Dial, Federal, and another defendant. Count III is a claim against Lloyd's and two of its brokers seeking recovery as a loss payee on the policy between Lloyd's and Federal.

Summons were issued the same day the complaint was filed. Federal, however, did not immediately answer the complaint. Instead

[o]n July 6, 1979, prior to answering Lincolnwood's Complaint, Federal moved to transfer the case to the District of Maryland, where Federal had, on June 12, 1979, filed a complaint against Lloyd's based upon its failure to indemnify Federal for its losses with respect to the Lincolnwood transaction and with respect to 23 other similar transactions where the lessee had terminated the lease prior to its stated term.

Appellant's Brief at 10–11. The district court deferred ruling on Federal's motion

---

should not be confused with the distinct procedure for certification of controlling issues of

law provided in 28 U.S.C. § 1292(b).

until it filed its answer. Federal answered on August 13, 1979. The answer admitted liability under Count I, apparently denied the allegation in Count II, and did not respond to Count III since that count was not directed against it. Federal's answer also included a cross-claim against Lloyd's for indemnity for all amounts due under the accelerated note held by Lincolnwood.

On August 27, 1979, the trial court denied Federal's motion to transfer as to Counts I and II and granted the plaintiff's motion for judgment on the pleadings as to Count I.[2] The court noted that liability and the amount of liability were admitted, a conclusion Federal does not challenge here. Moreover, the court, *sua sponte*, found there was no just reason for delay and directed entry of judgment on Count I pursuant to Fed.R.Civ.P. 54(b). On September 5, 1979, the trial court denied Federal's motion to amend the judgment by deleting the 54(b) certification. Other post-judgment proceedings before Judge Marshall finally resulted in the entry of a stay pending appeal pursuant to Fed.R.Civ.P. 62(d) upon Federal's filing of a supersedeas bond in the amount of $452,000.

Because the only issues in this appeal concern Civil Rule 54(b), some review of that rule's purpose and requirements is necessary. On the theory that prompt, efficient justice would be better served by broadening the previously accepted scope of lawsuits, the drafters of the Federal Rules of Civil Procedure included numerous provisions permitting the liberal joinder of parties and claims. To counterbalance what could be the occasional harsh effects of these joinder rules, the drafters also included rules vesting in the district court the discretion to provide some relief from their effects. Under Rule 42(b) the trial court may order separate trials for properly joined claims, so that, for example, a plaintiff's suit is not swamped by generally unrelated claims between defendants. Rule 54(b) serves a similar purpose. Ordinarily, a final judgment will not be rendered by a

trial court on an adjudicated claim until the court has resolved all of the issues between all of the parties to the action.

The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had. In recognition of this difficulty, . . . Rule 54(b) . . . was promulgated.

*Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511–12, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950). The rule thus gives the district court the power to render a final judgment as to a portion of a lawsuit provided that certain requirements are satisfied.

The requirements of the rule are easily stated, although their application has caused occasional difficulties. First, there must be an action involving multiple claims for relief or multiple parties. *See Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) (certification is improper when action presents only variants of a single claim). Second, there must be a final decision by the district court as to at least one claim or the rights and liabilities of at least one of the parties. Third, the district court must make "an express determination that there is no just reason for delay." Finally, the court must expressly direct the entry of judgment.

■ Federal only questions the district court's compliance with the third requirement of Civil Rule 54(b)—the "express determination that there is no just reason for delay." The appellant challenges that determination on two grounds. First, Federal argues that the trial court erred in failing to provide a statement of reasons for its determination. Second, Federal insists that

<hr/>

**2.** The court took under advisement the motion to transfer Count III. The motion was ultimately withdrawn when Count III was later dismissed without prejudice.

the trial court abused its discretion in making that determination.[3]

Whether there is no just reason for delay is a question addressed primarily to the discretion of the trial court. The district court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956). Nevertheless, because the Rule 54(b) procedure, if misused, can generate needless or duplicative appeals, the appellate court will review the district court's determination. The appellate court's review, however, is limited. It may reject a 54(b) certification and dismiss an appeal only if it finds an abuse of the district court's discretion. *See Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956). This is in contrast, for example, to the procedure for certification for interlocutory review of controlling questions of law pursuant to 28 U.S.C. § 1292(b). There, by statute, the appellate court may in *its* discretion decline to review issues certified by the district court. Thus, as recently stated by the Supreme Court in *Curtiss-Wright Corp. v. General Electric Co.*, —— U.S. ——, ——, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), once the district court has made a Rule 54(b) certification

the standard against which a district court's exercise of discretion is to be judged is the "interest of sound judicial administration." . . . Admittedly this presents issues not always easily resolved, but the proper role of the Court of Appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.

Federal's first objection is that the trial court failed to state reasons for its determination. It is true that this court in *U. S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1051 n.1 (7th Cir. 1979), admonished:

A proper exercise of the trial court's discretion under Rule 54(b) also requires more than a recital of the statutory formula. The considerations underlying the exercise of that discretion should be articulated. *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975); *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283 (2d Cir. 1974); *Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452 (3d Cir. 1958).

Whether or not that admonition was dictum, it represents this court's opinion of what constitutes the "better practice," and the failure to provide a written statement of reasons may in an appropriate case lead to a remand for such a statement.[4] The statement is, however, primarily an aid to the appellate court to permit it to review the exercise of the trial court's discretion.[5]

---

**3.** Federal does not directly question the district court's power to raise *sua sponte* the question of whether to direct entry of judgment pursuant to Rule 54(b). In this case, it would seem that the trial judge did no more than anticipate what surely would have been Lincolnwood's next motion. In any event, the rule specifies no particular procedure for obtaining a Rule 54(b) certification and there is precedent for raising the question on the court's motion. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2660 at 85–86 (1973). The district court's action here was within its discretion.

**4.** Whether a statement of reasons is merely advisable or a mandatory requirement in connection with entry of judgment under Rule 54(b) is unsettled. The Second Circuit has expressed its opinion that such a statement is desirable, but apparently will not refuse to consider an otherwise appropriately certified case

in the absence of such a statement. *See Arlinghaus v. Ritenour*, 543 F.2d 461 (2d Cir. 1976), and cases cited therein. The Third Circuit has adopted the Second Circuit's suggestion as a mandatory rule in that circuit. *See Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975). In *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724, 726 n.6 (3d Cir. 1975), the court declined to give the rule adopted in *Allis-Chalmers* retroactive effect.

**5.** The Second Circuit in *Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir. 1976), commented:

The benefit of such a reasoned statement is not merely that, as stressed in *Gumer*, it will aid us in discharging our duty to review the district court's exercise of discretion in issuing the certificate, . . . but that it will aid the district judge himself. A decision-

The failure of the district court to make a written statement at the time it makes a 54(b) certification is not a jurisdictional defect, *see Allis-Chalmers Corp.*, 521 F.2d at 367 n.16 (remanding cause for a statement of reasons), and need not occasion even a remand if the basis for the district court's determination is otherwise apparent.

■ In this case, the district court's initial order certifying the cause pursuant to Rule 54(b) did fail to articulate specifically the reasons why the court believed there was no just reason for delay.[6] The transcripts of the proceedings before the district court on the day of the order and thereafter, however, make plain the district court's reasons for its conclusion. The district court relied on the following circumstances in entering judgment:

1) The admitted liability of Federal to the Bank of Lincolnwood and Lincolnwood's uncontested right to immediate payment.

2) The probability that Federal's cross-claim against Lloyd's would be litigated in another forum and the likelihood that the resolution of that claim might be long in coming.

3) The danger that delay in issuing final judgment might prejudice Lincolnwood's ability to collect on its judgment because of Federal's precarious financial position.

This is a sufficient statement of reasons to permit this court to review the exercise of the trial court's discretion. Federal's contention that only the factors articulated by the trial judge at the time of the certification may be considered is without merit. The Third Circuit's decision in *Allis-Chalmers*, relied on by this court in *U. S. General*, makes it clear that a post-certification statement will suffice. A remand to the

district court now for a formal statement when its reasons are already apparent would be a meaningless exercise and serve no purpose other than to further delay these proceedings.

■ Federal's second allegation of error is that the trial judge abused his discretion in finding that there was no just reason for delay.

At present, no precise test exists for determining whether there is a just reason to delay the entry of judgment that can be satisfactorily or easily applied in every case; thus, the district court should feel free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote.

10 C. Wright & A. Miller, Federal Practice and Procedure § 2659 at 77–78 (1973). The Third Circuit has compiled the following catalogue of relevant considerations along with the caveat that it is not all-inclusive:

(1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Allis-Chalmers*, 521 F.2d at 364.[7]

Federal, dwelling on the first factor listed by the court in *Allis-Chalmers*, maintains

---

maker obliged to give reasons to support his decision may find they do not; "the opinion will not write."

There may be merit in this suggestion, but it would not seem to justify, by itself, the refusal of appellate courts to entertain appeals pursuant to Rule 54(b) which lack written statements of reasons. Indeed, in *Arlinghaus*, the court dismissed the appeal not for want of a statement of reasons, but for want of jurisdiction

after holding that the trial court abused its discretion in making the 54(b) certification.

6. The minute order of August 27, 1979, simply recites "The Court finds pursuant to Rule 54(b), F.R.Civ.P. that there is no just reason to delay the entry of a final enforceable judgment . . . and therefore directs the clerk to enter a final judgment . . . ."

7. The requirement that there be "no just reason for delay" is frequently referred to as a require-

that the relationship between Lincolnwood's claim on the note and its unadjudicated cross-claim against Lloyd's constitutes a compelling reason to withhold 54(b) certification. The note and the policy of insurance were parts of a single financial transaction. But to state that a cross-claim arises out of the same transaction as the principal claim does no more than restate a requirement of a proper cross-claim, *see* Fed.R.Civ.P. 13(g), and there is no doubt that Rule 54(b) permits separate treatment of the original claim and a cross-claim. *See Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956); 6 Moore's Federal Practice ¶ 54.35[2] (2d ed. 1976).

■ Federal also argues that the "integrated" nature of the transaction militates against permitting Lincolnwood to execute upon its judgment now.

As of March 31, 1976, Federal's unamortized contingent obligations arising out of [computer leasing transactions] was approximately $40,000,000, an amount far in excess of Federal's net worth of approximately $500,000. These facts were

generally known in the financial community, and thus banks never would have become parties to the . . . transaction and made the required loan to Federal on the strength of Federal's financial condition alone. A requisite premise of a bank's loan to Federal is the insurance coverage by Lloyd's. . . . The loan, lease and insurance policy are therefore essential parts of an integrated transaction.

Appellant's Brief at 6 (citations omitted). It therefore reasons that, because Lincolnwood was relying upon the insurance from Lloyd's, it is unfair to permit it to proceed to collect against Federal. Yet the financial arrangement itself was structured so that the bank held a promissory note permitting it to accelerate the balance due upon default and pursue its remedies against Federal. Certainly, the risk as to the refusal of Lloyd's to cover losses was intended to fall on the appellant, not the bank. Although the circumstances identified by Federal might justify the district court's exercise of discretion to delay entry of final judgment, we cannot say that the trial judge abused his discretion in declining to give them substantial weight.[8] This is

ment that there be no just reason to delay an appeal. This, however, is too narrow a reading of the Rule. Rule 54 in general is concerned with judgments. Subsection (b) provides for their entry piecemeal and it is apparent that the necessary determination, therefore, is that there is no just reason to delay entry of final judgment.

The entry of a final judgment has a number of important consequences. Ordinarily it is only from a final judgment that an appeal may be prosecuted under 28 U.S.C. § 1291. Indeed, the principal purpose of Civil Rule 54(b) is to permit piecemeal appeals "in the infrequent harsh case." Advisory Committee Note, 5 F.R.D. 473 (1946); *see Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 432–33, 76 S.Ct. 895, 897–98, 100 L.Ed. 1297 (1956). Yet immediate appealability is obviously not the sole consequence of a final judgment. *See generally* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2661 (1973). A judicial determination has no res judicata effect until it is embodied in a final judgment. *See* Restatement (Second) of Judgments § 14 (Tent. Draft No. 1, 1973). Interest on an adjudicated claim for money generally only accumulates upon the entry of a final judgment. *See* 28 U.S.C. § 1961. And perhaps most significantly for our

purposes here, the process of collecting upon an adjudicated claim can only commence after a final judgment has been entered.

Thus, even though Rule 54(b) was promulgated largely to permit occasional piecemeal appeals, we do not believe that either its language or the sound administration of justice require that its use be confined solely to permit appeals. In determining whether there is no just reason for delay, the district court may properly consider all of the consequences of a final judgment or the lack thereof and balance the competing interests of the parties in the context of the particular case.

8. Federal has suggested that the enforcement of the final judgment against it might impair its ability to prosecute its cross-claim against Lloyd's or its action against Lloyd's in Maryland. This consideration does not directly indicate that the Rule 54(b) certification was improper. It seems more relevant to whether the trial court should stay enforcement of the judgment until subsequent judgment is rendered as to the claims against Lloyd's. *See* Fed.R.Civ.P. 62(h). Federal, however, has never formally moved that the trial court issue such a stay. Moreover, even if it had made such a motion

particularly so when, as here, the liability as between the parties is uncontested and delay in the entry of judgment might prejudice the judgment winner's ability to execute upon it.

■ A partial adjudication of an action absent a Rule 54(b) certification remains interlocutory and "is subject to revision at any time before the entry of judgment adjudicating all the claims . . . ." Fed. R.Civ.P. 54(b). An important effect of a 54(b) certification is that the entry of judgment permits prompt execution. When no substantial reason appears why a litigant should not be entitled to collect upon a claim adjudicated in its favor immediately, the appellate courts will sustain the entry of judgment upon that claim by the trial court. *See United Bank of Pueblo v. Hartford Accident & Indemnity Co.*, 529 F.2d 490 (10th Cir. 1976); *Norris Manufacturing Co. v. R. E. Darling Co.* , 315 F.2d 633 (4th Cir. 1963); *cf. Allis-Chalmers*, 521 F.2d at 364 ("miscellaneous factors such as delay, economic and solvency considerations" may justify entry of judgment).

In *United Bank of Pueblo*, a bank brought an action to recover on a banker's blanket bond. The defendant impleaded a third-party defendant, and the two claims were ordered to be tried separately. The original claim was tried first and determined in the plaintiff's favor. Ten months later trial on the third-party claim was yet to be had, and the trial court entered judgment on the original claim. The Tenth Circuit, concluding that the 54(b) certification was not an abuse of discretion, noted,

> the district court appeared concerned that pending a final judgment in the action, the Pueblo bank was being paid 6 percent interest on its $50,000 judgment, whereas the prime interest rate was 11 percent. Undoubtedly, the then 10-month delay in

collecting its judgment was creating a financial injustice for the Pueblo bank. 529 F.2d at 492–93.

In *Norris Manufacturing Co.*, the court sustained the 54(b) certification despite a pending counterclaim between the parties. The appeals court there noted "the [trial] Court could properly reconsider how much longer the plaintiff might be required to wait to collect the purchase price of the goods it had sold and which was admittedly long since due and payable." 315 F.2d at 636.[9]

In the present case, like *Norris*, the liability of the appellant is uncontested. The possible financial detriment to Lincolnwood from delay is greater than the possible loss of interest in *United Bank of Pueblo*. Delay in the entry of final judgment would prevent execution. It is uncontested that a number of similarly situated banks have similar claims against Federal and that, absent a recovery from Lloyd's, it is unable to satisfy them all. This is a situation in which creditors must move swiftly to protect their interests and are entitled—save the debtor's bankruptcy—to the rewards of their diligence.

The just economic interest of Lincolnwood in the prompt entry of a final enforcement judgment was a factor which the trial court could properly consider. *See Curtiss-Wright Corp. v. General Electric Co.*, —— U.S. ——, ——, 100 S.Ct. 1460, ——, 64 L.Ed.2d 1 (1980). This is particularly so where, as here, the delay in adjudicating the remaining cross-claim promised to be considerable. Furthermore, no considerations of judicial economy indicate the inadvisability of the immediate judgment. There is little reason to believe the issue of liability on the note will be mooted by future events. A necessary prerequisite for

---

and the trial court denied it, we could not say that this circumstance alone would be sufficient to permit us to conclude that the denial was an abuse of discretion. *See Pioche Mines Consolidated, Inc. v. Dolman*, 336 F.2d 789 (9th Cir. 1964).

**9.** The plaintiff in *Norris* did have a demonstrable need for immediate recovery in order to pay

its federal taxes. That need, however, is not much more compelling than the need of the plaintiff here to bring its claim to judgment. The trial court in *Norris* also required the plaintiff to post a bond to secure any judgment which might be entered on the defendant's counterclaim.

any claim by Federal against Lloyd's would seem to be its obligation to pay the bank. *Compare Panichella v. Pennsylvania R. R.,* 252 F.2d 452 (3d Cir. 1958) (certification of dismissal of third-party claim for contribution is an abuse of discretion because if the plaintiff prosecuting the original claim takes nothing, there would be no need to consider the contribution question). Nor does it appear that the bank's claim would have to be relitigated in further proceedings. The validity of the note is unquestioned by the parties here, and there is no indication that Lloyd's intends to question the validity of that obligation. Finally, there is no possibility that Lincolnwood's recovery will be subject to a set-off. Federal has interposed no counterclaims against Lincolnwood in this action.[10] Thus, it cannot be said in this case that the trial court abused its discretion.

The Federal Rules of Civil Procedure were designed "to secure the just, speedy and inexpensive" determination of lawsuits. Fed.R.Civ.P. 1. The defendant would have us construe them to permit it to delay payment of an obligation which it admits is immediately, indeed past due. The district court was not persuaded that any just reason existed for further delay. Neither are we. We hold that the trial court acted within its discretion in ordering the entry of judgment. Because no challenge is made to the trial court's disposition on the merits, the judgment is affirmed.

10. The absence of any considerations of judicial economy militating against the entry of judgment in this case is a natural result of the fact that the liability of Federal is uncontested. Normally, when partial final judgment is entered on a contested claim, the trial court's determination that there is no just reason to delay is really that there is no just reason to delay an appeal. An appellate court reviewing that determination may become cognizant of factors, overlooked by the district judge, which make immediate appeal unadvisable. In contrast, where the liability is uncontested and therefore no substantial issues for appeal are present, the trial court's determination is really that there is no just reason to delay execution on the judgment. Thus, considerations relevant to the policy against piecemeal appeals, *e. g.,* delay of further proceedings in the trial

SWYGERT, Circuit Judge, dissenting.

I believe that the district court erred in entering judgment under Fed.R.Civ.P. 54(b). Therefore, I respectfully dissent.

My disagreement with the majority is twofold. First, I question the procedure by which the judgment was entered by the district court. Specifically, the certification was made by the district court *sua sponte* without a clear statement of the various interests at stake in this controversy. Second, I disagree with the substantive interpretation of the proper balancing of the interests and equities at stake. These factors are inextricably tied together. Adhering to the proper procedure in entering a judgment under Rule 54(b) will ease the task of the reviewing court. Also, it will ensure that the district court will consider the appropriate factors in making the Rule 54(b) determination.[1]

I.

After Federal filed its answer, the district court noted that liability and damages were admitted. Concluding that there was no just reason for delay, the district court directed entry of judgment pursuant to Fed.R.Civ.P. 54(b).

This procedure deviates from proper 54(b) certification in several ways. First, a 54(b) certification should not be made as a convenience to counsel, but only "in the infrequent harsh case," Advisory Committee Note, 5 F.R.D. 473 (1946). The district

court, avoidance of passing on questions unnecessarily, the importance of binding all parties in the litigation, are to a large extent inapplicable.

1. The twofold justification has been stated as such:

> The benefit of such a reasoned statement is not merely that . . . it will aid us in discharging our duty to review the district court's exercise of discretion in issuing the certificate, . . . but that it will aid the district judge himself. A decision maker obliged to give reasons to support his decision may find they do not; "the opinion will not write."

*Arlinghaus v. Ritenour,* 543 F.2d 461, 464 (2d Cir. 1976).

court's *sua sponte* entry of judgment ignored the requirement that a burden rests on the party seeking 54(b) entry to convince the court that such action is necessary. By entering judgment *sua sponte* the district court alleviated Lincolnwood of this burden and instead shifted the burden to Federal to demonstrate why such an entry should not be made. Such a shift in the burden is supported by neither the case law nor the policy of the rule. *See Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975). As the court stated in *Allis-Chalmers Corp.*,

> [T]he burden is on the party seeking final certification to convince the district court that the case is the "infrequent harsh case" meriting a favorable exercise of discretion.

*Id.* at 365.[2]

The district court also failed to state its reasons for entry of the 54(b) certification at the time of entry. In *U. S. General, Inc. v. City of Joliet*, 598 F.2d 1050 (7th Cir. 1979), we stated:

**2.** The majority opinion states that the district court did no more than anticipate Lincolnwood's next motion and cites 10 C. Wright & A. Miller, Federal Practice and Procedure § 2660 at 85–86 (1973) for the proposition that the question may be raised on the court's own motion. It follows this citation with the comment that such action was in the district court's discretion.

There are several problems with this analysis in the present case. First, the majority does not reconcile such a *sua sponte* action with the burden placed on the party receiving the entry under Rule 54(b). While there may be certain cases which are so clear that carrying such a burden would be an exercise in futility, this is certainly not the case. Federal is in the position of suffering serious damage by the possibility of immediate execution of the judgment.

Second, the majority citation is to Wright and Miller; and Wright and Miller cite three cases in support of this proposition. A reading of these three cases indicates that they are distinguishable from the present case. In *McNellis v. Raymond*, 287 F.Supp. 232 (N.D.N.Y.1968), *rev'd on other grounds*, 420 F.2d 51 (2d Cir. 1970), the court considered the matter *sua sponte* but refused to certify the judgment. The matter at issue was the ability of the trustee in a bankruptcy to void a transfer as a fraudulent conveyance. The court stated that he could not and allowed the trustee to proceed on a theory of usury. In *Combined Bronx*

A proper exercise of the trial court's discretion under Rule 54(b) also requires more than a recital of the statutory formula. The considerations underlying the exercise of that discretion should be articulated. . . . In spite of the lack of expression of the reasons underlying the exercise of the trial court's discretion, after an independent review of the record for the purposes of this case we hold the Rule 54(b) certificate was not improvidently granted. Future 54(b) certifications with similar deficiencies may not be expected to survive in this court.

*Id.* at 1051 n.1. *Cf. Arlinghaus v. Ritenour*, 543 F.2d 461 (2d Cir. 1976) (preferable practice is to give statement of reasons).

Admittedly, this statement in *U. S. General* is *dictum*. Also, as the majority opinion highlights, the district judge, after his entry of judgment, did state for the record some of the reasons for his decision. Yet, from the perspective of obtaining proper judicial review and ensuring that 54(b) certificates are properly granted, such a method should not be countenanced.

*Amusements, Inc. v. Warner Bros. Pictures, Inc.*, 132 F.Supp. 921 (S.D.N.Y.1955) a 54(b) judgment was entered *sua sponte* without discussing whether the district court had the power to act on its own motion. The judgment was entered in favor of the defendant on a defense of release. Finally, in *Pierce v. Hewlett-Packard Co.*, 125 F.Supp. 329 (D.Mass.1954) (Wyzanski, J.) *aff'd on other grounds*, 220 F.2d 531 (1st Cir.), *cert. denied*, 350 U.S. 833, 76 S.Ct. 69, 100 L.Ed. 744 (1955) a 54(b) judgment was entered in favor of the defendant. Judge Wyzanski certified the matter because he wished to have the court of appeals review his decision on the merits.

Thus, all three cases are distinguishable from the present case. In none of the cases was a judgment which imposed a large financial burden entered *sua sponte*. Also, none of the cases provides even a superficial analysis of the propriety of acting *sua sponte*; rather, each court assumed its power to so act.

The third objection I have to the majority's view on this point is its final statement that "the district court's action . . . was within its discretion." Apparently, the majority has concluded that it is within the discretion of the district court to act *sua sponte*. Even if I were to agree with such a conclusion, the majority sets forth no criteria by which to judge the exercise of such discretion.

The second reason for requiring a statement of reasons at the time of certification is to ensure that the district court properly exercises its discretionary function under the rule. As is clear from the majority opinion, as well as other authority, 6 Moore's Federal Practice ¶ 54.22, at 364 (2d ed. 1976), our review of the district court's decision is limited to a determination of whether there was an abuse of discretion. Such a relaxed standard of review is in recognition of the district court's ability to assess and balance the mix of factors at issue. *Id.* If no reasons are stated at the time of entry and instead we are to rely on the statements of the district court which are scattered throughout the record, our standard of review becomes even more relaxed. We must speculate as to what factors the district court considered. For instance, in the present case the district judge emphasized the prejudice which would be suffered by Lincolnwood if entry were delayed. Such a finding is an implicit rejection of the prejudice to Federal or the possibility that the structure of the transaction was such that Lincolnwood expected to receive payments from Lloyd's rather than Federal. Yet nowhere in the record did the district court explicitly inquire into Federal's financial condition or the structure of the transaction. Some facts relating to these matters were before the district court but nowhere are we told why, on balance, they were rejected.

I agree that this court must assess the district court's action by the abuse of discretion standard. But unless we require an explicit statement of reasons and considerations, we will be unable to determine whether the discretion was even exercised, much less if it was abused.

## II.

Some of the relevant factors in reviewing 54(b) certifications have been stated as:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Allis-Chalmers Corp.,* 521 F.2d at 364. In the present case the relationship between the adjudicated action (Lincolnwood's action on the note), the unadjudicated claim (Federal's action against Lloyd's)[3], and Federal's solvency considerations are of primary importance in reviewing the 54(b) certification. The district court either disregarded these factors or considered them insignificant in entering judgment. For this alone I would hold that the district court abused its discretion.[4]

---

**3.** The majority states that the fact that a cross-claim arises out of the same transaction as the principal claim does no more than restate the requirement for a proper cross-claim under Fed.R.Civ.P. 13(g). I do not understand Federal's argument as being merely that the claim against Lloyd's arose out of the deal between Federal and Lincolnwood. Instead, I read Federal's argument as being that besides arising from the same transaction, it was inextricably bound up with the loan from Lincolnwood. This goes beyond the test of Rule 13(g) as arising out of the same transaction and more properly should be characterized as consisting of one *single* transaction.

**4.** The Supreme Court's recent decision in *Curtiss-Wright Corp. v. General Elec. Co.,* —— U.S. ——, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) provides guidance for circuit court review of 54(b) certifications. As the quotation in the majority opinion notes, our role is not to "reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright Corp.,* —— U.S. at ——, 100 S.Ct. at 1466.

The crucial issue, and one which is almost completely ignored by the majority opinion, is to what extent did Lincolnwoood look to Federal in the event of a lease termination. In my judgment a 54(b) certification could not have been made without a detailed analysis of the financing arrangement. If Lincolnwood looked solely to Federal for payment I would tend to agree with the majority's conclusion. But likewise, if Lincolnwood expected payment through the Lloyd's policy, I cannot see how the bank would suffer prejudice. In requiring the bank to wait until Lloyd's pays over, the bank is indeed harmed by the delay in payment (or eventual lack thereof). But it is a responsibility it must assume for entering a transaction structured in such a manner. To the extent the majority allows immediate collection by Lincolnwood, it gives Lincolnwood an unfair advantage over other creditors—an advantage the bank does not deserve, because of the nature of the transaction it chose to enter.

The propriety of a 54(b) certification, thus, must include an assessment of the relationship between the adjudicated and unadjudicated claims. *Allis-Chalmers Corp.*, 521 F.2d at 364. The majority's treatment of this crucial matter ignores the clear business practicalities of the matter. The majority reasons that a note exists between Lincolnwood and Federal and thus Lincolnwood can sue and collect on the note. It cannot be denied that the record contains these documents. Yet such reasoning ignores several important questions about the transaction. Did Lincolnwood know that Federal apparently had millions of dollars in contingent liabilities with a net worth far below this amount? Considering this discrepancy, would a commercially prudent bank lend over $500,000 secured only by computer equipment and a lease which could be terminated at will? And ultimately, would Lincolnwood have lent the money absent the Lloyd's policy? It seems highly improbable that Lincolnwood entered the transaction not knowing Federal's financial condition. Good business sense would dictate it would not lend $500,000 without acquiring proper security. Therefore it stands to reason that Lincolnwood knew that Lloyd's was its true source of payment and that the policy with Lloyd's was the *sine qua non* of the transaction.[5]

Once it becomes clear that Lincolnwood looked to Lloyd's for payment, the 54(b) analysis becomes entirely different. No prejudice is suffered by Lincolnwood's being forced to wait. It is only getting what it bargained for. At the same time, it becomes clear that Federal is suffering extreme prejudice. It is apparent that Federal never expected to secure its many liabilities with its rather meager assets.[6] Rather,

As is discussed *infra*, the district court failed to properly weigh the equities at stake by almost ignoring the prejudice to Federal and erroneously concluding that Lincolnwood expected payment from Federal, and not Lloyd's. Also, the conclusion that Lincolnwood looked to Federal for payment is not supported by the record. The relevant information in the record indicates that Lincolnwood expected payment from Lloyd's. *See* note 5 *infra*.

**5.** Besides the financing documents, the only evidence in the record on this matter is an affidavit of Federal's Corporate Counsel, Sidney M. Wilson, Jr. This affidavit states that the insurance policy was an integral part of the transaction and that Lincolnwood was aware of Federal's liabilities being far in excess of its net worth. The affidavit concludes that Lincolnwood would not have entered the deal absent the Lloyd's policy.

I acknowledge that some of these assertions are made on information and belief. However, this is the only information relevant on this matter contained in the record. Lincolnwood came forward with no evidence to demonstrate the contrary. This highlights the problems attendant to a *sua sponte* entry which absolves the party of marshalling evidence to show why a 54(b) certification should be made.

**6.** The affidavit of Mr. Wilson states that Federal's liability is over $100 million with $40 million now due. The net worth of Federal appears to be approximately $1,500,000. While the numbers may be slightly off, Lincolnwood has offered nothing to demonstrate the contrary and it appears to be conceded that Federal's liabilities far exceed its assets.

it looked to Lloyd's for payment; and entry of judgment in this case imposes an unexpected liability upon Federal and may well force it into bankruptcy.[7]

I am well aware that our procedural rules can be used as a tactic to delay the payment of a judgment owed.[8] *Allis-Chalmers Corp.*, 521 F.2d at 367 (Gibbons, J., dissenting). However, the statement of such a truism lends little to a fair or equitable resolution of the legal issues at stake. Indeed, it would be just as easy to point a finger at the Bank of Lincolnwood and state that our procedural rules should not be utilized to rescue companies from their own business miscalculations. I believe that Lincolnwood expected payment from the Lloyd's policy and not to recognize this is to ignore the business realities of the transaction and attribute a business naivete to Lincolnwood.

---

**7.** The majority opinion observes that Federal never formally moved the trial court to issue a stay under Fed.R.Civ.P. 62(h). A reading of the colloquy between the district court and Federal's counsel leaves little doubt as to how this matter would have been resolved. Federal did move under Rule 59 to amend the judgment to omit the finding of finality. This motion was denied.

**8.** Mention must be made of the majority's discussion of *United Bank of Pueblo v. Hartford Accident & Indemnity Co.*, 529 F.2d 490 (10th Cir. 1976) and *Norris Mfg. Co. v. R. E. Darling*

*Co.*, 315 F.2d 633 (4th Cir. 1963). I do not disagree with the general principles stated in these decisions. The district court can consider the hardship which occurs when awaiting execution of a judgment. My quarrel is with the conclusion that Lincolnwood had an expectation of payment from Federal. *United Bank of Pueblo* and *Norris Manufacturing* properly concluded that the unadjudicated claims were not so related to the adjudicated claims as to require delay of entry of the judgment. As noted above, I do not believe this is such a case.