The MEAD CORPORATION and Shawmut Development Corporation, Plaintiffs,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. C2–99–818.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 10, 2001.

William Chester Wilkinson, Thompson Hine & Flory - 2, Columbus, OH, Michael D Glass, Polito & Smock, Pittsburgh, PA, for plaintiffs.

Brian G Kennedy, Richard C. Lepley, U.S. Department of Justice Civil Division/Fed Programs Branch, Washington, DC, Randall Eugene Yontz, U.S. Attorney's Office, Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This matter is before the Court on Plaintiffs' September 25, 2000 motions (Record 8, 9) for a temporary restraining order, a preliminary injunction, a permanent injunction, partial summary judgment and final judgment with respect to Count II of the complaint. At a conference held with counsel on November 9, 2000, pursuant to Local Rule 65.1, the Court denied Plaintiffs' motions for a temporary restraining order and a preliminary injunction (Transcript of Local Rule 65.1 Conference at 42–43). For the reasons set forth herein, the Court **GRANTS** Plaintiffs' motions for a permanent injunction, partial summary judgment and final judgment on Count II of the complaint (Record 1).

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on August 24, 1999, asserting challenges to the assignment of beneficiaries to Plaintiffs by the Commissioner of Social Security ("the Commissioner") under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. § 9706 *et. seq.*, ("Coal Act"), as well as a constitutional challenge to the application of the Coal Act to Plaintiffs under the Due Process and Takings Clauses of the Fifth Amendment (Complaint, Record 1). The Commissioner filed a motion to dismiss on October 26, 1999 (Record 3). Plaintiffs responded to the motion on November 23, 1999 (Record 5), and the Commissioner filed a reply on December 7, 1999 (Record 7).

On September 25, 2000, Plaintiffs filed two separate, but nearly identical motions on Count II of the complaint, seeking a temporary restraining order, a preliminary injunction, a permanent injunction, sum-

mary judgment, and a final judgment (Record 8, 9) ("Plaintiffs' Motions"). Count II challenges the timeliness of assignments made to Plaintiffs after the date set forth in the Coal Act. The Commissioner filed a response to Plaintiffs' Motions on October 16, 2000 (Record 10), and Plaintiffs filed a joint reply on October 27, 2000 (Record 13). A conference regarding Plaintiffs' motions for a temporary restraining order and a preliminary injunction was held pursuant to Local Rule 65.1 on November 9, 2000. At that conference, the Court denied Plaintiffs' motions for a temporary restraining order and a preliminary injunction (Transcript of Local Rule 65.1 Conference at 42–43).

On November 17, 2000, the Court denied the Commissioner's motion to dismiss (Record 14). Now that the motion to dismiss has been denied, it is appropriate for the Court to consider Plaintiffs' remaining motions on Count II.

## FACTUAL BACKGROUND

An extensive discussion of the factual background of this case and the Coal Act was set forth in the Court's November 17, 2000 Order denying the Commissioner's motion to dismiss (Record 14). Therefore, the Court will set forth only the factual basis necessary for the determination of this motion.

Section 9706(a) of the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. § 9701 *et. seq.*, provides in part:

> For purpose of this chapter, the Commissioner of Social Security shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a signatory operator which (or any related person with respect to which) remains in business. . . .

In September 1995, the Commissioner assigned to Mead 121 beneficiaries, and to Shawmut 107 beneficiaries, who were not

originally assigned to them, nor to any other signatory operator or related person prior to October 1, 1993. As of September 25, 2000, these assignments have cost Mead $1,700,628.69, and Shawmut $1,847,441.56. (Record 8 at 5, Record 9 at 5).

In Count II of their complaint (Record 1), Plaintiffs challenge the Commissioner's authority to make original, or initial, assignments of beneficiaries after October 1, 1993. Plaintiffs argue that the Commissioner's September, 1995 assignments are void under *Dixie Fuel Company v. Commissioner of Social Security*, 171 F.3d 1052 (6th Cir.1999), and thus Plaintiffs are entitled to a refund or credit of premiums paid to the Fund, as well as injunctive relief prohibiting the Commissioner from making any future initial assignments to Plaintiffs, and from reassigning to Plaintiffs any beneficiaries who were not initially assigned to other operators before October 1, 1993.[1]

## DISCUSSION

### A. *Dixie Fuel*

In *Dixie Fuel Company v. Commissioner of Social Security*, 171 F.3d 1052, 1060 (6th Cir.1999), the Sixth Circuit Court of Appeals addressed the "purely legal question" of whether the Coal Act permits the Commissioner to make initial assignments of beneficiaries after October 1, 1993. In support of his actions, the Commissioner made two arguments. First, the Commissioner argued that unassigned beneficiaries are "assigned" to the unassigned pool, and thus any assignments made to Dixie Fuel after the statutory deadline were merely reassignments, and not initial assignments. *See id.* at 1060–61. The Commissioner, however, abandoned this argument during the appeal. *See id.* at 1061. Second, the Commissioner argued that the

---

1. Although the parties dispute assignments made after October 1, 1993, the statute states that assignments shall be made *before* October 1, 1993, meaning that no assignments could be made *after September 30, 1993*. In order to avoid confusion, the Court will continue to use the October 1, 1993 designation in this Order. *See Dixie Fuel Co. v. Comm'r Soc. Sec.*, 171 F.3d 1052, 1057 n. 7 (6th Cir.1999).

October 1, 1993 date in the Coal Act is not a "jurisdictional mandate, but merely a direction to 'spur the [Social Security Administration] into prompt action.'" *See id.* In response, Dixie Fuel argued that the date was "a mandate terminating the [Social Security Administration's] authority to assign beneficiaries." *See id.*

Relying on the plain language of the Coal Act, as well as the "entire statutory scheme" and the legislative history, the Sixth Circuit Court of Appeals held that the Commissioner's interpretation of the Act was not entitled to deference, and therefore, the October 1, 1993 deadline had deprived the Commissioner of his authority to make initial assignments. *See id.* at 1063–64.

The Sixth Circuit denied an *en banc* rehearing of *Dixie Fuel* on July 7, 1999.

## B. Plaintiffs' Count II

### 1. Summary judgment

Plaintiffs seek summary judgment on Count II under the authority of *Dixie Fuel.* Plaintiffs are entitled to summary judgment if there are no genuine issues of material fact, and if Plaintiffs demonstrate that they are entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c) provides in part:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *See Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *See Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). *Accord Oakland County v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "'to secure the just, speedy and inexpensive determination of every action.'" *See Celotex v. Cattrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted). *Accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio*

*Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *See Adickes,* 398 U.S. at 157–60, 90 S.Ct. 1598.

■ If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

In his Memorandum in Opposition, the Commissioner concedes that this Court is bound by *Dixie Fuel* (Record 10 at 5–6). Nonetheless, the Commissioner proceeds to explain why he "respectfully disagrees" with *Dixie Fuel,* in order to "preserve the point for possible appeal" and to "give this Court the opportunity to review the points that would be urged on any appeal of this issue." (*Id.* at 6).

There is no material difference between the Plaintiff in *Dixie Fuel* and the Plaintiffs in this case; the identical question, with respect to Count II, is present in both cases. The question is purely one of statutory construction as a matter of law, and that question has been explicitly decided by the Sixth Circuit Court of Appeals.[2] Additionally, even though the Commissioner did not seek *certiorari* review of the Sixth Circuit's decision in *Dixie Fuel,* he has requested an *en banc* consideration of this issue in appeals of *Bellaire Corporation v. Apfel,* C2–99–532 (S.D.Ohio June 30, 2000) *appeal docketed,* Nos. 00–4080, 00–4082 (6th Cir. Aug. 30, 2000), an order by Judge Kinneary, and *Peabody Coal Company v. Apfel,* C2–99–201 (W.D.Ky. July 11, 2000) *appeal docketed,* No. 00–6239 (6th Cir. Sept. 18, 2000), an order by Judge McKinley. The Sixth Circuit Court of Appeals denied the petitions for an *en banc* hearing of these appeals on December 6, 2000.

No purpose would be served by this Court's consideration of the arguments of the Commissioner which set forth the Commissioner's disagreement with the decision of the Court of Appeals and, based on those arguments, reaching a decision which either agrees or disagrees with the decision of the Court of Appeals. Until the Sixth Circuit changes its decision on this pure question of law, *Dixie Fuel* remains the law of this Circuit and this Court is duty-bound to follow it. (Transcript of Local Rule 65.1 Conference at 21).[3]

---

**2.** Although the Commissioner argues that *Dixie Fuel* will not be followed outside of the Sixth Circuit, the Court notes that at least one court outside of the Circuit has followed the holding. *See Holland v. Pardee Coal Co., Inc.,* 93 F.Supp.2d 706, 715 (W.D.Va.2000).

**3.** In his Memorandum in Opposition, the Commissioner relies on the Declaration of Richard Harron, the Director of the Division of Coverage and Support, Office of Program Benefits, Office of the Deputy Commissioner for Disability and Income Security Programs, Social Security Administration (Harron Decl. at ¶ 1). The Office of the Deputy Commissioner for Disability and Income Security Programs is the component of the Social Security Administration responsible for coordinating implementation of the Coal Act for the Commissioner. (*Id.*). In their Reply, Plaintiffs object to the Declaration under Fed.R.Civ.P. 56(e), and ask that it be stricken.

■ The Court finds that Plaintiffs are entitled to summary judgment on Count II of their Complaint. The Commissioner has failed to raise a genuine issue of material fact, and Plaintiffs have demonstrated that they are entitled to judgment as a matter of law under *Dixie Fuel.* Therefore, the Court **GRANTS** Plaintiffs' motion for summary judgment as to Count II of the Complaint (Record 1).

·2. **Injunction**

In their Complaint, Plaintiffs seek permanent injunctive relief which (1) directs the Commissioner to rescind initial assignments made to Plaintiffs after October 1, 1993; (2) directs the Commissioner to notify the Trustees of the United Mine Workers of America Combined Benefit Fund of the rescission of these assignments, and (3) orders the Commissioner to make no future assignments to Plaintiffs of beneficiaries who were not initially assigned to an operator before October 1, 1993 (Record 9 at 18, Record 15 at 1).[4]

■ A permanent injunction will issue only if the following four factors are established: (1) actual success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any harm the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest. *See e.g., United States v. Miami University,* 91 F.Supp.2d 1132, 1147 (S.D.Ohio 2000);

The Commissioner relies on the Harron Declaration to argue that because Congress did not provide sufficient funding to the Social Security Administration for it to complete the assignment process by October 1, 1993, Congress could not have intended that date to be a jurisdictional deadline.

The Herron Declaration is in support of the Commissioner's argument that *Dixie Fuel* was wrongly decided. Apart from the fact that the Commissioner could have made the same argument before the Sixth Circuit Court of Appeals in *Dixie Fuel,* this Court, for the reasons stated, finds no reason to decide whether the Commissioner's arguments, then or now, have merit and should result in a decision contrary to that reached by the Court of Ap-

*Causeway Medical Suite v. Foster,* 43 F.Supp.2d 604, 610 (E.D.La.1999), *aff'd,* 221 F.3d 811 (5th Cir.2000).

■ Plaintiffs have demonstrated success on the merits, and have shown an irreparable injury, because they have no adequate remedy at law. The issuance of an injunction will do no harm to the Commissioner. As for the public interest, the beneficiaries at issue will not be harmed, because they will continue to receive the same benefits. The Commissioner argues that the public will be harmed in the following manner. If the beneficiaries at issue are not properly assigned to Plaintiffs, they will be classified as "unassigned" and the money for their premiums will come from the Fund, instead of from Plaintiffs. If money from the Fund is not sufficient to cover the premiums of unassigned beneficiaries, additional funds will be transferred from the Abandoned Mine Reclamation Fund, a trust established to reclaim lands after mining has taken place. *See* 26 U.S.C. § 9705(b); 30 U.S.C. § 1231(a); 30 U.S.C. § 1232(h). The Commissioner argues that by relieving Plaintiffs of responsibility for the beneficiaries' premiums, the public will be harmed because money intended to reclaim the environment will be diverted to cover premiums. (Transcript of Local Rule 65.1 Conference at 28–30). The Court rejects this argument. Although money may be taken from the Reclamation Fund, Congress determined that this was an appropriate method of funding

peals. The admissibility of the Herron Declaration presents a close question. The Court finds, upon consideration of the arguments, that the motion to strike the Herron Declaration should be overruled. However, the Court is not taking into consideration the content of the Declaration in its decision, because the Court has not considered the merits of the Commissioner's arguments for the reasons heretofore stated.

4. · Although Plaintiffs initially requested an order directing the Trustees to issue a refund or credit to Plaintiffs for premiums paid for the beneficiaries at issue, Plaintiffs have since withdrawn this request. *See* Record 15; Transcript of Local Rule 65.1 Conference at 34–36.

unassigned beneficiary premiums if necessary, and Congress established the statutory deadline in § 9706. Thus, although there may be some abstract harm to the public, it is minor, and is substantially outweighed by the other three factors. Therefore, the Court **GRANTS** Plaintiffs' motion for a permanent injunction. The Court now turns to the scope and terms of the injunction.

At the conference held on September 9, 2000, two issues were raised which are relevant to Plaintiffs' requested relief. First, the Commissioner indicated that because *Dixie Fuel* is the controlling authority in the Sixth Circuit, the Commissioner no longer makes initial assignments or reassignments of beneficiaries who were not initially assigned prior to October 1, 1993, to operators located within the Sixth Circuit. However, he indicated that because Plaintiff Shawmut is not located within the Sixth Circuit, Shawmut is eligible to receive such assignments (Transcript of Local Rule 65.1 Conference at 21–24). Although the Commissioner informed the Court that the next round of assignments will not occur until October 2001, in the interim, as result of administrative review, Shawmut could receive reassignments of beneficiaries who were not initially assigned to any operator prior to October 1, 1993. (*Id.*).

■ As to Shawmut's eligibility to receive assignments, the Court determined in its November 17, 2000 Order denying the Commissioner's motion to dismiss that Shawmut's claim is properly venued in this district. (Record 14). Thus, even though Shawmut, a Pennsylvania corporation, would not otherwise benefit from the precedential value of *Dixie Fuel*, because it is party to a suit before this Court the Court has the authority to enjoin the Commissioner from assigning to Shawmut any further initial assignments or reassignments of beneficiaries who were not initially assigned to an operator prior to October 1, 1993.

■ Second, the Commissioner informed the Court that at this time, the Commissioner will rescind only those assignments made after July 7, 1999, the date of the Sixth Circuit's denial of an *en banc* rehearing in *Dixie Fuel* (Transcript of Local Rule 65.1 Conference at 37–39). Thus, there is a significant gap, from October 1, 1993 to July 7, 1999, during which assignments made are void as a matter of law under *Dixie Fuel*, but which the Commissioner refuses to rescind.

In light of the Court's ruling that any initial assignments or reassignments of beneficiaries not initially assigned to an operator prior to October 1, 1993 which were made to Plaintiffs after September 30, 1993, are void as a matter of law, the Court hereby **ORDERS** the Commissioner to rescind all initial assignments or reassignments of beneficiaries not initially assigned to an operator prior to October 1, 1993, made to Plaintiffs after September 30, 1993. The Court further **ORDERS** the Commissioner to notify the Trustees of the United Mine Workers of America Combined Benefit Fund of the rescission of these assignments. The Court hereby **ENJOINS** the Commissioner from making any future initial assignments of beneficiaries, or reassignments of beneficiaries who were not initially assigned to any operator prior to October 1, 1993, to either Shawmut Development Company or The Mead Corporation.

**3. Final Judgment**

Federal Rule of Civil Procedure 54(b) provides in part:

> When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■ Certification of a final judgment under Rule 54(b) requires the Court to make two independent findings. *See General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir.1994). First, the

Court must expressly direct the entry of final judgment as to fewer than all of the claims. *See id.* Second, the Court must expressly determine that there is no just reason to delay final judgment. *See id.* (citing 10 Charles A. Wright, Arthur R. Miller & Mayr Kay Kane, Federal Practice and Procedure: Civil 2d § 2655 (1983 & Supp.1993)). This requires the Court to consider a variety of factors, including:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*See id.* at 1030 (citations omitted). Although Rule 54(b) "is intended to strike a balance between the undesirability of more than one appeal in a single action and the need for making a review available in a multi-party or multi-claim situations at a time that best serves the needs of the litigants," *Day v. NLO, Inc.*, 3 F.3d 153, 155 (6th Cir.1993) (internal quotations omitted), the rule does not apply only to judgments sought for the purpose of appellate review. The Seventh Circuit has explained:

The requirement that there be "no just reason for delay" is frequently referred to as a requirement that there be no just reason to delay an appeal. This, however, is too narrow a reading of the Rule. Rule 54 in general is concerned with judgments. The entry of final judgment has a number of important consequences. Ordinarily is it only from a final judgment that an appeal may be prosecuted under 28 U.S.C. § 1291. Indeed, the principal purpose of Civil Rule 54(b) is to permit piecemeal appeals "in the infrequent harsh case." Yet immediate appealability is obviously not the sole consequence of a final judgment. A judicial determination has no res judicata effect until it is embodied in a final judgment. Interest on an adjudicated claim for money generally only accumulates upon the entry of a final judgment. And ... the process of collecting upon an adjudicated claim can only commence after a final judgment has been entered. Thus, even though Rule 54(b) was promulgated largely to permit occasional piecemeal appeals, we do not believe that either its language or the sound administration of justice require[s] that its use be confined solely to permit appeals. In determining whether there is no just reason for delay, the district court may properly consider all of the consequences of a final judgment or the lack thereof and balance the competing interests of the parties in the context of the particular case.

*See Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949 n. 7 (7th Cir.1980) (internal citations omitted). Thus in addition to considering the necessity of a final judgment for purposes of an appeal, the Court must also consider the effect of and necessity for a final judgment in the moving party's favor prior to the complete adjudication of all claims. *See Solomon v. Aetna Life Insurance Co.*, 782 F.2d 58, 61 (6th Cir.1986).

The Court finds that its decision granting summary judgment to Plaintiffs on Count II is a final judgment as to one of Plaintiffs' seven claims. After considering the factors set forth above, the Court finds that there is no just reason to delay entry of final judgment. First, Count II is distinct from and independent of Plaintiffs' other claims, and involves a purely legal question which is not implicated in the other claims. Second, it is highly unlikely that the need for review might be mooted by future developments in this Court, because Count II presents a purely legal question, governed by controlling precedent. Therefore, no developments in this

Court will affect the need for review of the issue presented in Count II. Third, there is no possibility that the appellate court will be obliged to consider the same issue a second time, as none of Plaintiffs' remaining claims involve the issue presented in Count II. Additionally, three appeals dealing with the exact issue presented herein are currently pending before the Sixth Circuit. Thus, entering final judgment as to Count II at the present time may help conserve the Sixth Circuit's resources. Fourth, there is no claim which could result in an off-set against this judgment.

Finally, the Court finds that a variety of other factors, including convenience to the parties. and unnecessary delay, weigh heavily in favor of certification of a final judgment as to Count II prior to adjudication of Plaintiffs' remaining claims. Although the Sixth Circuit decided the exact question presented in Count II just two years ago in *Dixie Fuel,* and subsequently denied an *en banc* rehearing of that decision, the Commissioner persists in his assertion that *Dixie Fuel* was wrongly decided, and refuses to rescind assignments which are void under *Dixie Fuel,* but which were made before the *Dixie Fuel* decision was rendered. Although the Plaintiffs will not appeal this decision in their favor, the Commissioner has repeatedly clearly expressed his intent to pursue an appeal on Count II. Given that resolution of Plaintiffs' remaining claims could take a considerable length of time, the Court concludes that the entry of a final judgment on Count II is appropriate so that the Commissioner may pursue an appeal and so that this issue may be resolved as soon as possible. The precedential weight of *Dixie Fuel,* as well as the significant financial burden the assignments at issue place on Plaintiffs weigh heavily in favor of entry of a final judgment. Failure to enter a final judgment would needlessly delay final resolution of Plaintiffs' claim.

Therefore, pursuant to Fed.R.Civ.P. 54(b), the Court finds that there is no just reason for delay, and expressly **DIRECTS** the entry of final judgment as a matter of law for Plaintiffs as to **Count II** of their Complaint (Record 1).

### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiffs' motions for summary judgment (Record 8, 9) as to Count II of the Complaint, **GRANTS** Plaintiffs' motion for a permanent injunction, and **ORDERS** the Commissioner of Social Security to rescind all initial assignments or reassignments of beneficiaries not initially assigned to an operator prior to October 1, 1993, made to Plaintiffs after September 30, 1993. The Court further **ORDERS** the Commissioner to notify the Trustees of the United Mine Workers of America Combined Benefit Fund of the rescission of these assignments. The Court hereby **EN-JOINS** the Commissioner from making any future initial assignments or reassignments of beneficiaries who were not initially assigned to an operator prior to October 1, 1993, to either Shawmut Development Company or The Mead Corporation. The Court **DIRECTS the entry of final judgment** for Plaintiffs as to Count II of their Complaint.

**IT IS SO ORDERED.**